# BROOKE DISTRIBUTORS, INC. v. VENTURA, et al.

### Case No. 83-278-AP

Eleventh Judicial Circuit, Appellate Division, Dade County

March 14, 1985

### APPEARANCES OF COUNSEL

**Morton R. Goudiss** and **John F. Paulin, Jr.** for appellant.

**St. Julien P. Rosemond, Jr.** for appellee.

Before SHAPIRO, KOGAN, FEDER,* JJ.

### OPINION OF THE COURT

PER CURIAM.

Brooke Distributors, Inc. filed a Complaint in County Court against Samuel B. Ventura on March 19, 1982, alleging breach of contract of

---

* Judge Feder did not participate in oral argument but based his opinion on the record and briefs. Judge Lantz, who did attend oral argument, resigned from the bench before this opinion was rendered.

payment guaranteed by Ventura to Brooke. Ventura was properly served. The parties entered into a stipulation and order for settlement and compromise dated May 28, 1982. The terms required Ventura to pay Brooke the sum of Two Hundred ($200.00) Dollars per month commencing June 15, 1982, until the debt was satisfied. After two monthly installments, Ventura ceased payment.

In September, 1982, Brooke's attorney sent a demand letter to Ventura's attorney. No response was forthcoming. Thereafter, Final Judgment was entered against Ventura on September 28, 1982.

On April 23, 1983, Intercontinental Bank was served with Brooke's Motion for Garnishment after Judgment and writ of Garnishment in the amount of Two Thousand Seven Hundred Twenty Eight and 62/100 ($2,728.62) Dollars. Service was made on Wallace Neumann, a Vice President of the bank. No response to the Writ was filed by the bank. On May 24, 1983, Brooke filed an Affidavit of Indebtedness. A Motion for Default was granted and default was entered against the bank on May 31, 1983. Final Judgment was entered against the bank on the same date.

Intercontinental filed a Motion for Relief pursuant to Rules 1.540 and 1.500 Fla. Rules of Civil Procedure on June 9, 1983, together with two Affidavits in support of the bank's motion. Wallace Neumann stated in his Affidavit he was an Assistant Vice President of the bank and was an officer authorized to receive and accept process. He further stated: "That of his own personal knowledge he does not remember being personally served with the instant Writ of Garnishment. That it is his policy upon receiving any . . . Writ of Garnishment . . . to always sign and date a copy of the process and return said copy to the Sheriff." He stated it is the bank's policy to keep a docket book of all such service and the bank's docket book did not reflect an entry for the subject Writ. His conversations with other staff members of the bank reveal no other employees with knowledge of receiving said Writ.

The Affidavit of Robert Serrapinana states Mr. Ventura's checking account was closed prior to service of the Writ.

The Bank's motion was heard by the Court on June 26, 1983. On July 27, 1983, the lower Court entered its order granting the bank's motion "[O]n the grounds that there was excusable neglect and a meritorious defense and also on the grounds that there was no affidavit of garnishee's indebtedness to defendant. . . ." This appeal is from the instant Order.

It is the duty of the trial court to determine whether the facts of any particular Motion to Vacate constitute excusable neglect. *Doctor's*

112

*Hospital of Hollywood, Inc. v. Madison*, 415 So.2d 84 (Fla. 4th DCA 1982). A trial court is vested with broad discretionary powers in this regard. *Schwab & Co., Inc. v. Breezy Bay, Inc.*, 360 So.2d 117 (Fla. 3rd DCA 1978). However, where a Motion to Vacate is deficient, the lower Court would be incorrect in granting same. *Bags by Ande, Inc. v. Schilling*, 406 So.2d 536 (Fla. 4th DCA 1981).

The Bank's Motion seeking relief alleges excusable neglect in the Bank's failure to respond to the Writ of Garnishment and includes Affidavits of two bank executives. Neither of these Affidavits admits service on the bank but to the contrary, each denies knowledge of service or any record of service on the bank. Neither contends service was received but inadvertently misplaced, given to the wrong person, misfiled, or any of a number of other reasons which could be considered excusable neglect.

In *Hall v. Byington*, 421 So.2d 817 (Fla. 4th DCA 1982), the Court recognized it was incumbent upon the movant to establish both excusable neglect and a meritorious defense in order to vacate a default judgment. "The former must be established by a sworn pleading which states a legal excuse for failure to comply with the rules of procedure or by testimony under oath in support of an unsworn motion." *Hall v. Byington, supra*, P. 817.

We must now analyze the alleged legal excuse in the case sub judice. In *Hall*, the alleged excusable neglect was the placing by the attorney on his diary of an incorrect date for the filing of an Answer to a Complaint. Such a failure has been recognized as excusable neglect. *Travelers Ind. Co. v. Bryson*, 341 So.2d 1013 (Fla. 4th DCA 1977) and *English v. Hecht*, 189 So.2d 366 (Fla. 3rd DCA 1966). The problem in *Hall* was the lack of a sworn motion attesting to the attorney's error. The lawyer's oath stated the allegations were "[T]rue and correct to the best of his knowledge and belief." The Court held such a statement was insufficient because it is qualified and not positive. See also *United Bonding Inc. Co. v. Dura-Stress, Inc., et al.*, 243 So.2d 244 (Fla. 2d DCA 1971).

In the instant case, the Bank has not established excusable neglect in either its Motion or the accompanying Affidavits. Neither did it establish inadvertence or any other recognizable reason to vacate the final judgment and default pursuant to the rules of procedure. The Affidavits merely allege ignorance of service which is certainly not excusable neglect.

Appellee argues there were insufficient allegations to support the entry of Final Judgment against the Bank citing *Hauser v. Di Chateli-*

*er's Plant Food Co., Inc.*, 350 So.2d 548 (Fla. 2d DCA 1977). We disagree. The papers and pleadings filed were sufficient to allow the Court to conclude an indebtedness by the Bank to Ventura especially in light of the lack of denial by the Bank.

Based upon the foregoing, we conclude the action of the lower Court in granting the motion for relief was error. Accordingly, the Order entered on July 27, 1983, be and the same is hereby vacated. This matter is remanded to the lower Court with instructions to reinstate the Final Judgment of May 31, 1983 against the garnishee.

Reversed and remanded with instructions.

---

DISSENT

Feder, Richard Y., Judge

I agree with the majority on its determination that there was sufficient pleadings for the entry of a Final Judgment against the Bank despite the Appellee's citation of *Hauser v. Di Chatelier's Plant Food Co., Inc.*, 350 So.2d 548 (Fla. 2d DCA 1977).

I disagree, however, that the Bank failed to establish excusable neglect or other acceptable excuse for the failure to timely respond to The writ of Garnishment.

Justice should, wherever possible, be based on a decision of merits or lack thereof of any cause. The law has long recognized the power-nay, the duty-of tribunals to set aside paper issues in order to reach the real, to dissolve the necessity of precise legal formulae in order to see through to the truth, to avoid the Common Law pitfalls of legal mumbo jumbo in order to speak in understandable English (or to be prefectly precise, a reasonable facsimile thereof). See *Clark v. Roberto's, Inc.*, 320 So.2d 870 (Fla. 4th DCA 1975) and *Reichenbach v. Southeast Bank, N.A.*, 10 F.L.W. 300 (Fla. 3rd DCa 1985).

The majority failed to see any proof of "mistake, inadvertence or excusable neglect" in the Affidavits filed by the Bank. True, those "magic words" are nowhere to be found in the affidavits; but they are there in fact without the precise legal incantation.

The Motion for Relief from Default Judgment states:

"3. Furthermore the Garnishee's Affidavit will establish, mistake, inadvertence, surprise or excusable neglect *in that said writ was either lost, misplaced or destroyed by the previous officer who failed to notify the Bank's attorney."* (emphasis supplied)

114

The Affidavits simply supply the flesh to the above bare bones by indicating the Bank has no record of receiving it, docketing it, or forwarding it to the appropriate branch, as is the normal business procedure followed by the Bank. The conclusion to be reached from the contents of the Affidavit is inescapable that either there was a mistake in serving it or receiving it, or there was excusable neglect by one or more Bank personnel failing to follow normal Bank procedures or inadvertence in losing or misplacing it or any combination of the above conclusions.

The decision of the trial judge comes to this Court clothed with the mantle of correctness. To strip the mantle from the shoulders of the Court requires a showing by the Appellant of a gross abuse of discretion. Since any and all of the "inescapable conclusions" listed above would justify the trial judge setting aside the Default, I would affirm.